# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRIANNA A. DOTSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 3:16-00997 |
| | ) | Judge Trauger/Brown |
| **CAROLYN W. COLVIN,** | ) | |
| **ACTING COMMISSIONER** | ) | |
| **OF SOCIAL SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge.**

## REPORT AND RECOMMENDATION

This action was brought under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner, denying plaintiff's applications for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq*. For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 13) be **DENIED**, and the Commissioner's decision **AFFIRMED**.

## I. PROCEDURAL HISTORY[1]

An application for SSI was filed on November 15, 2010 on plaintiff's behalf, a child under 18 years of age at the time, alleging a disability onset date of October 6, 2010, subsequently amended to May 20, 2009 (Doc. 9, p. 78). Plaintiff alleged disability due to attention deficit, hyperactivity disorder, depression, speech and emotional difficulties. (Doc. 9, pp. 148, 153, 166,

---

[1] The procedural history below is adopted from the jurisdiction and procedural history sections of the two Administrative Law Judge (ALJ) decisions (Doc. 9, pp. 17-45, 120-39), unless indicated otherwise. References to page numbers in the administrative record are to the page numbers that appear in bold in the lower right corner of each page.

251, 295, 363) The claim was denied initially on May 3, 2011, and upon reconsideration on August 25, 2011. Plaintiff requested a hearing on August 31, 2011, which was held before ALJ Michelle Thompson on August 13, 2012 in Nashville (the first hearing). Plaintiff's mother appeared and testified at the first hearing without benefit of counsel.

The ALJ entered an unfavorable decision on August 17, 2012 (Doc. 9, pp. 120-39) (the first decision), after which plaintiff filed a request with the Appeals Council on November 16, 2012 to review ALJ Thompson's decision (Doc. 9, pp. 90-92). The Appeals Council vacated the hearing decision, and remanded the case to ALJ Thompson with instructions to: 1) evaluate and weigh the medical opinions of Dorothy Lambert, Ph.D., Ken Owen, M.S., and to consider plaintiff's low Global Assessment of Functioning (GAF) scores and other related evidence; 2) evaluate evidence of verbal aggression and noncompliance; 3) consider the opinions of treating and nontreating source opinions and explain the weight given to those opinions; 4) update the evidentiary record with any existing medical and education records. (Doc. 9, p. 140-42)

ALJ Thompson held a second hearing on August 22, 2014, also in Nashville. Plaintiff was represented by attorney William Benjamin at the hearing. Plaintiff's mother once again appeared and testified. ALJ Thompson entered an unfavorable decision on November 14, 2014. (Doc. 9, pp. 17-45) Thereafter, counsel filed a request for the Appeals Council to review ALJ Thompson's second unfavorable decision on November 24, 2014 (Doc. 9, p. 15), and a supporting brief on January 16, 2015. (Doc. 9, pp. 539-41) The Appeals Council denied plaintiff's request for review on March 31, 2016. (Doc. 9, pp. 1-6)

Plaintiff brought this action through counsel on May 26, 2016 (Doc. 1), following which she filed a motion for judgment on the administrative record on October 17, 2016 (Doc. 13).[2] The

---

[2] This action was reassigned to the undersigned on October 18, 2016. (Doc. 15)

Commissioner responded in opposition on November 16, 2016 Doc. 16), and plaintiff replied on November 28, 2016 (Doc. 19). This matter is now properly before the court.

## II. EVIDENCE

The medical and other evidence in the record, as well as the transcript of both hearings, are incorporated herein by reference. The evidence and hearing testimony will be addressed in the analysis below to the extent that it is relevant to the issues.

## III. ANALYSIS

### A. The ALJ's Notice of Decision

A child under the age of eighteen seeking SSI benefits will be considered disabled if she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i). Childhood disability claims involve a three-step process evaluating whether the child claimant is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the child claimant is working. 20 C.F.R. § 416.924(b); *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003). If not, at step two, the ALJ must decide whether the child claimant has a severe mental or physical impairment. 20 C.F.R. § 416.924(c); *Elam*, 348 F.3d at 125. Third, the ALJ must consider whether the claimant's impairment(s) meets or equals a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d); *Elam*, 348 F.3d at 125. The burden of proof lies with the plaintiff to prove that she is disabled. *Lowery v. Comm'r of Soc. Sec.*, 55 Fed.Appx. 333, 337-38 (6th Cir. 2003); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)(citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

### B. Standard of Review

The district court's review of the Commissioner's final decision is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and

3

whether the decision was made pursuant to proper legal standards. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2014). Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### C. Claims of Error

#### 1. Whether the ALJ Erred in Not According Proper Weight to the Opinion of Psychiatrist Dr. Lynna Hollis, M.D. (Doc. 14, ¶ 1, pp. 8-13)

Plaintiff argues that the ALJ did not accord Dr. Hollis' opinion proper weight, nor did she explain adequately the weight given. The ALJ characterized Dr. Hollis as plaintiff's "treating provider" (Doc. 9, p. 30), which the Magistrate Judge construes as a "treating source." Defendant argues that Dr. Hollis was not a treating source. Rather, defendant argues that Dr. Hollis was a supervising physician who never actually treated plaintiff, but merely signed off on the actions of those who did. (Doc. 16, p. 10)

The regulations require that a claimant present evidence from "acceptable medical sources" to support her claim for benefits. 20 C.F.R. § 404.1513(a). "Acceptable medical sources" include "[l]icensed physicians" and "[l]icensed or certified psychologist." 20 C.F.R. § 404.1513(a). The regulations further classify "acceptable medical sources into three types: nonexamining sources, nontreating (but examining) sources, and treating sources." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). More particularly, 20 C.F.R. § 404.1502 defines "treating source" as follows:

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical conditions(s). We may consider an acceptable medical source who has treated or evaluated you only a few times . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s). . . .

The SSA evidence of record provides the following with respect to this claim of error. The May 28, 2008 SSA disability report (Doc. 9, pp. 247-258) does not list Dr. Hollis as one of plaintiff's health care providers (Doc. 9, p. 252). The June 26, 2009 SSA disability report (Doc. 9, pp. 291-303) does not list Dr. Hollis as one of plaintiff's health care providers (Doc. 9, pp. 295-97). The November 16, 2009 SSA disability report (Doc. 9, pp. 327-36) does not list Dr. Hollis as one of plaintiff's health care providers, but it does list Nurse Practitioner (NP) Leah Bowen as one (Doc. 9, p. 332). The January 4, 2011 SSA disability report (Doc. 9, pp. 359-68) does not list Dr. Hollis as one of plaintiff's health care providers, but does list NP Brittany Haemmerlein as one (Doc. 9, p. 363). The May 12, 2011 SSA disability report (Doc. 9, pp. 369-75) does not list Dr. Hollis as one of plaintiff's health care providers, but again lists NP Haemmerlein as one (Doc. 9, p. 372). The September 1, 2011 SSA disability report (Doc. 9, pp. 376-83) does not list Dr. Hollis as one of plaintiff's health care providers, but once again lists NP Haemmerlein as one (Doc. 9, p. 379).

Turning to the medical evidence of record, NP Bowen conducted a psychiatric evaluation of plaintiff on May 12, 2009 April and signed the evaluation that same date. (Doc. 9, pp. 677-82) Dr. Hollis's name does not appear anywhere on the evaluation. There are twenty-two "Outpatient Treatment Progress Notes" in the record from the Centerstone Community Health Center (Centerstone) dating from June 10, 2009 to February 4, 2011 in which Dr. Hollis' name does appear.

(Doc. 9, pp. 670-74, 695-97, 702-11, 759-60, 765-66, 796-99, 821-22, 842-43, 849-50, 859-64, 867-68, 873-74, 876-79, 919-22) However, either NP Bowen or NP Haemmerlein is identified as the "provider" in each of these progress notes, and signed as such on the actual date of service. Although Dr. Hollis' name appears below theirs adjacent to the heading "MD Signature" in each of these progress notes, Dr. Hollis never signed the progress notes earlier than three days after service was provided. In fact, the record shows that Dr. Hollis signed the progress notes an average of ten days after service was provided, with an average of 23 days more than half of the time.

Dr. Hollis is mentioned repeatedly in "Infoscriber Medication Log[s]." (Doc. 9, pp. 981, 988, 991, 997, 1002, 1007, 1028, 1097-98, 1105-06, 1109-10, 1113-15, 1120, 1142-44, 1148-50, 1155-56, 1173-75, 1182-84, 1187-89, 1194-96, 1202-04) However, in each and every entry, Dr. Hollis is identified as the "Supervising Physician," whereas the actual "Prescriber" is identified as either NP Haemmerlein or NP Christine Henry. There also are three other "Medication Log[s]" in the record covering the period February 13, 2008 to May 18, 2011 that show NP Bowen prescribed medications for plaintiff. (Doc. 9, pp. 712-13, 894-97, 924-25) There is no mention of Dr. Hollis in these three records, as "Supervising Physician" or otherwise.

As for testimonial evidence, plaintiff's counsel stated the following to the ALJ at the August 22, 2014 hearing:

> [T]he last point I'd like to make is all the doctors that have given opinions about Brianna that have seen her have given significant limitations. Centerstone, Dr. Lynn Hollis [phonetic] – 47, 48 GAF scores – Dr. Lambert, which we discussed earlier, as well as Dr. Owens – those are the doctors who've actually seen her. . . .

(Doc. 9, p. 78) Notwithstanding counsel's statement that Dr. Hollis had "actually seen her," no evidence was adduced through testimony at either the first or the second hearing that Dr. Hollis ever saw plaintiff, much less treated her. Moreover, a thorough review of the record shows that Dr.

6

Hollis never assigned plaintiff either of the GAF scores noted above. There are several Tennessee Target Population Group (TPG) Forms in the record that assign plaintiff with GAF scores of 47 or 48. (Doc. 9, pp. 693-94, 731-36, 741-42, 1190-91) However, Dr. Hollis's name appears nowhere on any of these forms. GAF scores of 47 and 48 also appear repeatedly in the "Outpatient Treatment Progress Notes" discussed above. (Doc. 9, pp. 702, 710, 760, 765, 796, 799, 813, 822, 843, 850, 859, 868, 876, 878, 919, 922) Once again, however, the treatment reflected in those progress notes was provided by NPs Bowen and Haemmerlein, not Dr. Hollis. GAF scores of 47 and 48 also are noted repeatedly in the "Infoscriber Medication Log[s]" discussed above. However, treatment provided in those entries are attributed to NPs Haemmerlein (Doc. 9, pp. 987, 1001, 1006, 1027, 1104, 1172, 1181), Henry (Doc. 9, pp. 1125, 1135, 1141, 1147, 1154), and Bowen (Doc. 9, pp. 1186, 1193, 1201) – again, not to Dr. Hollis. Finally, there are several other records in which the GAF scores of 47 and 48 are noted, but those records are attributable to Licensed Clinical Social Worker (LCSW) Dianne Castellano (Doc. 9, p. 714) and Jessi Lefholz/Johnson,[3] MS (Doc. 9, pp. 899, 926, 980, 1096) – once again, not to Dr. Hollis.

Finally, there is the Medical Source Statement (MSS) dated October 1, 2014 that is the basis for this claim for relief. (Doc. 9, pp. 1268-70) The MSS bears the signature of NP Henry, below which the following note appears on the form: "May be completed and signed by PA, NP, etc. Must be co-signed by M.D., or Ph.D." (Doc. 9, p. 1270) Dr. Hollis signed the MSS following a forward slash (/) that appears immediately after NP Henry's signature, showing that NP Henry actually completed the MSS, and Dr. Hollis *co-signed* the document after the fact. Once again, no direct contact or association indicated between doctor and patient.

---

[3] The following providers are identified in the record: Jessi Lefholz and Jessi Johnson, both of whom have the same identifier "710" following their name. Although the dates applicable to these names overlap, the Magistrate Judge assumes without deciding that the identifier "710" signifies that Lefholz and Johnson are the same person.

7

While it may be that providers in a clinic environment will see the claimant more frequently than will the supervising physician, and while it also may be true that the supervising physician need only have access to the entire treatment record, it also must be true that the supervising physician has actually seen and examined the patient directly before characterizing a supervising physician as a treating source. *See Rios v. Comm'r of Soc. Sec.*, 2016 WL 3144086 * 7 (N.D. Ohio June 6, 2016). More particularly, a physician is not a treating source in the absence of any evidence that the physician ever saw or evaluated a claimant. *See Matelske v. Comm'r of Soc. Sec.*, 2013 WL 4520202 * 13 (W.D. Mich. Aug. 26, 2013); *Bieri v. Astrue*, 2008 WL 4185967 * 10 (S.D. Ohio Sept. 2, 2008). Because there was not an ongoing treatment relationship between plaintiff and Dr. Hollis, the latter is not a "treating source" under the regulations. *See Engebrecht v. Comm'r of Soc.* Sec., 572 Fed.Appx. 392, 398-99 (6th Cir. 2014); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506-07 (6th Cir. 2006); *Daniels v. Comm'r of Soc. Sec.*, 152 Fed.Appx. 485, 490 (6th Cir. 2005).

As explained above, the record shows that Dr. Hollis was not a "treating source" as defined in the regulations. The next question is whether the ALJ adequately explained the weight she gave to Dr. Hollis' opinion.

Whereas the opinions of a treating source generally are entitled to "controlling weight," the opinions of medical sources such as Dr. Hollis "are never assessed for 'controlling weight.'" *Gayheart*, 710 F.3d at 376-77 (quoting 20 C.F.R. § 404.1527(c)(2)). In other words, although the ALJ is required to provide "good reasons" for discounting the weight given to the opinion of a "treating source," *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)), the ALJ is not procedurally required to give "good reason" for the weight given to the opinion for such medical sources as Dr. Hollis, *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514-15 (6th Cir. 2010). Indeed,

8

having accorded Dr. Hollis' opinion "no weight" for the reasons stated at n. 3 below,[4] the ALJ was not required by the regulations to provide any further explanation. *See Norris v. Comm'r. of Soc. Sec.*, 461 Fed.Appx. 433, 439 (6th Cir. 2012)("[A]n ALJ need only explain its reasons for rejecting a treating source statement because such an opinion carries 'controlling weight' under the SSA.")(citing *Smith*, 482 F.3d at 876 ("[T]he SSA requires ALJs to give reasons for only *treating* sources.").

As shown above, Dr. Hollis was not a "treating source," her opinion was not entitled to controlling weight, nor was the ALJ required to provide "good reason" for the weight she gave to Dr. Hollis's opinion. Because any error on the ALJ's part in mis-characterizing Dr. Hollis as a "treating source" was harmless, plaintiff is not entitled to relief on her first claim of error.

## 2. Whether "the ALJ Erred by Not Addressing" Plaintiff's Hospitalization for a Second Suicide Attempt and the Opinion of Treating Physician, Dr. Todd Peters, M.D., That Plaintiff Had a GAF Score of 45 (Doc. 14, ¶ 2, pp. 13-14)

Plaintiff argues that the ALJ never "discussed or reviewed" the records of plaintiff's second suicide attempt, and Dr. Peter's opinion that plaintiff had a GAF score or 45. Plaintiff asserts further that "[t]hese records were submitted to the record shortly after a request for Appeals Council review . . . [and] . . . although made a part of the record at Exhibit 33F the ALJ never reviewed them."

---

[4] The Undersigned considered the opinion of the claimant's treating provider Lynna Hollis, M.D[.] (Ex. 32F). Dr. Hollis opined that the claimant has marked limitation in every functional domain, except moving about and manipulating objects and that the claimant has a long documented history of dysfunctional behavior and emotional dysregulation, 'which can be attributed to her psychiatric disorders' (Ex. 32F). The undersigned gives no weight to Dr. Hollis' opinion because it is inconsistent with the evidence that shows the claimant does well when she takes her medications, treatment records, and the claimant's academic performance. The claimant has done well academically in school and has successfully advanced to each grade level within the accommodations provide[d] to her. The claimant has problems getting along with others, but it seems that she is able to manage her behaviors depending on whom she is interacting with, as evidence by the opinion of her behavioral specialist at exhibit 33E and her testimony that she respects some, but not all adults. The claimant is able to get along with friends and adults at church and recently started a job at KFC. The claimant has had only one hospitalization for mental health issues, which was likely brought on by the claimant being without her medication for a time. The evidence does not support marked limitation in any functional domain, as Dr. Hollis asserts.

9

Plaintiff avers that the ALJ's "failure . . . to follow procedural rules for assigning weight to the opinions of treating sources and . . . giving good reason for the weight assigned" constitutes reversible error.

Plaintiff asserts, and the record confirms, that she was hospitalized at the Vanderbilt Psychiatric Hospital (Vanderbilt) during the period October 24, 1014 through October 31, 2014 following a second suicide attempt, and that Dr. Peters assessed plaintiff with a GAF score of 45 during her hospitalization. (Doc. 9, pp. 539-40, 1287-92) The record shows that the ALJ entered her unfavorable decision on November 14, 2014 – two weeks after plaintiff was discharged from Vanderbilt. (Doc. 9, p. 37) However, plaintiff asserts, and the record confirms, that the evidence at issue was never presented to the ALJ. (Doc. 9, p. 45; Doc. 14, p.14) Indeed, plaintiff asserts and the record confirms that a new claim based on this new evidence at issue was first submitted to the Appeals Council on January 14, 2015 (Doc. 9, p. 539-40; Doc. 14, p. 14) – two months after the ALJ entered her unfavorable decision. The record shows that the Appeals Council's denial of plaintiff's request for review included the new evidence pertaining to plaintiff's second suicide attempt and subsequent hospitalization at Vanderbilt. (Doc. 9, pp. 1-5)

Plaintiff's demands for relief include the following: 1) "[r]eversing the [d]efendant's final decision and awarding the [p]laintiff the Social Security Income to which she is entitled"; 2) "remand . . . to the Defendant Commissioner for a new hearing with an Administrative Law Judge under Sentence four of 42 U.S.C. § 405(g)." (Doc. 14, p. 15)

As for plaintiff's request to reverse and award benefits, to the extent that Ex. 33F provides new evidence and information not previously before the ALJ, federal courts reviewing claims for Social Security benefits may not reverse an ALJ's decision on the basis of evidence first submitted to the Appeals Council. *See Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993)(citations omitted);

*see also Pompa v. Commissioner of Social Sec.*, 73 Fed.Appx. 801, 804 (6th Cir. 2003)(citing *Cotton*).

Turning to plaintiff's demand to remand for a rehearing, the sixth sentence under § 405(g) reads in relevant part as follows:

> The court may . . . remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is **new** evidence which is **material** <u>and</u> that there is **good cause** for the failure to incorporate such evidence into the record in a prior proceeding . . . .

(bold and underline added) Evidence is "new" if it did not exist at the time of the administrative proceeding, and "material" if there is a reasonable probability that a different result would have been reached if introduced at the proceeding. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010). "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 269 F.3d at 357. The law is well established that the Sixth Circuit takes "a harder line on the good cause test" with respect to timing and thus requires that the claimant "give a valid reason for his failure to obtain evidence prior to the hearing." *Courter v. Comm'r of Soc. Sec.*, 479 Fed.Appx. 713, 725 (6th Cir. 2012)(quoting *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). Under § 405(g), plaintiff bears the burden of establishing that remand is warranted. *See Foster*, 279 F.3d 357.

The evidence at issue is not new as defined above, because it existed and was available to present to the ALJ at least two weeks prior to the date the ALJ entered her unfavorable decision. In other words, the evidence existed at the time the administrative proceeding still was open. The evidence also is not material. More particularly, plaintiff makes no effort to show how the evidence

would have made a difference. She merely asserts the following:

> We submit further that given this new evidence and given the rest of the evidence above including all the opinions of all the doctors in [the] file that actual[ly] saw Ms. Dotson that Dr. Hollis' opinion should be assigned great weight and Ms. Dotson should be determined to be medically disabled per SSA guidelines.

(Doc. 14, p. 14) With its reference to Dr. Hollis, to whom this new-evidence claim does not pertain, the statement is merely a summary statement of plaintiff's view of her case, *i.e.*, the statement above is a legal conclusion, not a legal argument. The law is well established that the district court is not obligated on judicial review to supply factual allegations in support of claims where no facts are alleged. *See Hollon ex rel Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006)("[W]e decline to formulate arguments on [appellant's] behalf"). Consequently, this argument is waived. *See Moore v. Comm'r of Soc. Sec.*, 573 Fed.Appx. 540, 543 (6th Cir. 2014)(citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In addition to not being able to satisfy the new-material half of the two-part test under § 405(g), plaintiff fails to demonstrate good cause for failure to present the evidence at issue to the ALJ while the administrative proceedings below still were open. As previously established, plaintiff's hospitalization at Vanderbilt ended two full weeks prior to the date the ALJ entered her unfavorable decision. Moreover, plaintiff does not assert that she sought to submit the new evidence to the ALJ to review, either while the administrative proceedings were open or afterward, nor can it be gleaned from the record that she sought to do so.

Plaintiff's second claim of error is without merit for the reasons stated above.

### 3. Whether the ALJ Erred in Not Properly Considering
### Plaintiff's Noncompliance with Treatment
### and Prescribed Medications
### (Doc. 19)

Plaintiff argues in her reply to defendant's response that the ALJ erred in denying her disability claim because she "failed to properly consider and evaluate [her] noncompliance with treatment and prescribed medications in light of her severe impairment of Oppositional Defiant Disorder [ODD]." Plaintiff did not raise this claim of error in her brief in support of her motion for judgment on the administrative record. She first raised this claim of error as an "additional issue" in her reply (Doc. 19) to defendants response (Doc. 16) to her motion for judgment on the administrative record (Doc. 13).

Plaintiff mentions ODD twice in her brief in support of her motion for judgment on the administrative record, but only in terms of the ALJ listing ODD as one of plaintiff's severe impairments. (Doc. 14, pp. 1, 6) Plaintiff also asserts unambiguously in her brief that "[t]he issue at hand revolves around two questions": first, "whether the ALJ erred by not according proper weight to treating psychiatrist Lynna Hollis' opinion; and second, "whether the ALJ erred by not addressing a mental hospitalization for a suicide attempt and the subsequent treating physician's opinion of limitation in the form of a Global Assessment of Functioning or GAF score." (Doc. 14, p. 2) In other words, plaintiff raised her ODD claim of error in her reply to defendant's response to her motion for judgment on the administrative record.

The Sixth Circuit has held that an issue presented for the first time in a reply to a response is waived. *See Kuhn v. Washentaw County*, 709 F.3d 612, 624 (6th Cir. 2013)(an argument is waived if not raised in the initial brief); *Golden Living Center-Frankfort v. Secretary of Health and Human Services*, 656 F.3d 421, 429 (6th Cir. 2011)(citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)(arguments raised for the first time in a reply brief are waived)); *United States v. Perkins*, 994

13

F.2d 1184, 1191 (6th Cir. 1993)("[i]ssues raised for the first time in a reply brief are not properly before th[e] court"); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)("we have found issues to be waived when they are raised for the first time . . . in replies to responses"). Although there is scant authority in the Sixth Circuit, other circuits that have considered this question have so held in the Social Security Context. *See Butler v. Soc Sec. Admin*, 146 Fed.Appx. 752, 753 (5th Cir. 2005); *Elletson v. Astrue*, 319 Fed.Appx. 621, 623 (9th Cir. 2009); *Carter v. Astrue*, 413 Fed.Appx. 899, 906 (7th Cir. 2011); *Lowry v. Astrue*, 474 Fed.Appx. 801, 804 (2nd Cir. 2012); *Jones v. Colvin*, 647 Fed.Appx. 878, 885 (10th Cir. 2016). Moreover, at least four district courts in the Sixth Circuit have so ruled. *Tennant v. Comm'r of Soc. Sec.*, 2016 WL 5799164 * 5 (W.D. Mich., Oct 5, 2016); *Brown v. Comm'r of Soc. Sec.*, 2015 WL 12681367 * 14 (E.D. Mich., Oct 20, 2015); *Blount v. Colvin*, 2014 WL 4231182 * 10 (N.D. Ohio, Aug. 21, 2014); *Yazell v. Comm'r of Soc. Sec.*, 2009 WL 2982882 * 3 n. 2 (S.D. Ohio, Sep. 15, 2009).

Plaintiff's ODD claim for relief is waived for the reasons stated above.

## IV. CONCLUSION
## AND
## RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that plaintiff's motion for judgment on the administrative record (Doc. 13) be **DENIED**, and the Commissioner's decision **AFFIRMED**. The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this 29th day of March, 2017.


                                             /s/ Joe B. Brown  
                                             Joe B. Brown  
                                             United States Magistrate Judge