UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRIANNA A. DOTSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:16-cv-00997 |
| ) | Judge Trauger/Brown |
| CAROLYN W. COLVIN, ) | |
| ACTING COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM**

**I. INTRODUCTION**

Plaintiff Brianna Dotson brought this action in the district court pursuant to 42 U.S.C. § 405(g) and 1383(c) seeking judicial review of the final decision of the Social Security Administration (SSA) through its Commissioner (the Commissioner), denying her application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq*.

Presently before the court is plaintiff's objection (Doc. 25) to the Magistrate Judge's May 12, 2017 Report and Recommendation (R&R) (Doc. 22) that recommended plaintiff's motion for judgment on the administrative record (Doc. 13) be denied and the Commissioner's denial of benefits affirmed. The Commissioner replied on May 17, 2017. (Doc. 26)

**II. STANDARD OF REVIEW**

When a magistrate judge enters a R&R regarding a dispositive matter, the district court must review *de novo* any portion, proposed findings, or recommendations in the R&R to which a proper objection is made. 28 U.S.C. § 636(b)(1); Rule 72(b)(3), Fed. R. Civ. P.. In conducting its review, the district court may accept, reject, modify the recommended disposition in whole or in part, receive

further evidence, or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1); Rule 72(b)(3), Fed. R. Civ. P..

The district court's review of the Commissioner's final decision in a Social Security case is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record, and whether the decision was made pursuant to proper legal standards. 42 U.S.C. §§ 405(g) and 1381(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2014). Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2003). The Commissioner's decision must stand if substantial evidence supports the conclusion reached, even if the evidence supports a different conclusion. *Gayheart*, 710 F.3d at 374.

### III. PROCEDURAL HISTORY AND EVIDENCE

The procedural history set forth in the R&R (Doc. 22, pp. 1-3) has been reviewed, deemed factually correct, and incorporated herein by reference. The evidence relevant to plaintiff's single claim of error is addressed in the analysis below.

### IV. PLAINTIFF'S OBJECTION TO THE R&R

Plaintiff's sole objection to the R&R is that the Magistrate Judge erred in not considering Dr. Lynna Hollis, M.D., as a treating source, thereby failing to accord her opinion controlling weight. (Doc. 25, pp. 1-3) Plaintiff sets forth a three-part argument in support of her objection: 1) two Centerstone Medical Progress Notes (progress notes), the first dated May 5, 2014 and the second July 7, 2014 (Doc. 25, p. 2), establish that Dr. Hollis was a treating source; 2) the Magistrate Judge erred in relying on *Matelske v. Comm'r of Soc. Sec.*, 2013 WL 4520202 (W.D. Mich. Aug. 26, 2013)

and *Bieri v. Astrue*, 2008 WL 4185967 (S.D. Ohio Sept. 2, 2008) which stand for the proposition that "a physician is not a treating source in the absence of any evidence that the physician ever saw or evaluated a claimant" (Doc. 25, p. 2); 3) "substantial evidence of record supports the opinion of . . . Dr. Hollis resulting in disabling limitations per SSA guidelines . . . ." (Doc. 25, pp. 2-3)

## V. ANALYSIS

### A. Whether Dr. Hollis Was a Treating Source Based on The May 5, 2014 and July 7, 2014 Treatment Notes

Plaintiff's first argument is that the ALJ erred in not considering Dr. Hollis as a treating source. Plaintiff's specific argument is quoted below:

> We submit that contemporaneously signed treatment notes of the supervising physician (Dr. Hollis) and the providing nurse practitioner (Christina Henry) can be taken as proof of the supervising physician actually being present at the examination. We further submit that this is a close as it gets to prima facie evidence of Dr. Hollis being a treating or examining physician. We submit also that to suggest Dr. Hollis, who spent years of supervising of the plaintiff's care and signed off multitudes of times on treatment notes over numerous visits didn't see the plaintiff or participate in the examination when actually present contemporaneously is not reasonable.

(Doc. 25, p. 2)

The Magistrate Judge's treatment of this issue in the R&R is quoted below in its entirety for convenience of reference:[1]

> The SSA evidence of record provides the following with respect to this claim of error. The May 28, 2008 SSA disability report (Doc. 9, pp. 247-258) does not list Dr. Hollis as one of plaintiff's health care providers (Doc. 9, p. 252). The June 26, 2009 SSA disability report (Doc. 9, pp. 291-303) does not list Dr. Hollis as one of plaintiff's health care providers (Doc. 9, pp. 295-97). The November 16, 2009

---

[1] The page numbers referred to in the excerpt of the R&R quoted below are the page numbers that appear in bold in the lower right corner of the pages in the administrative record.

SSA disability report (Doc. 9, pp. 327-36) does not list Dr. Hollis as one of plaintiff's health care providers, but it does list Nurse Practitioner (NP) Leah Bowen as one (Doc. 9, p. 332). The January 4, 2011 SSA disability report (Doc. 9, pp. 359-68) does not list Dr. Hollis as one of plaintiff's health care providers, but does list NP Brittany Haemmerlein as one (Doc. 9, p. 363). The May 12, 2011 SSA disability report (Doc. 9, pp. 369-75) does not list Dr. Hollis as one of plaintiff's health care providers, but again lists NP Haemmerlein as one (Doc. 9, p. 372). The September 1, 2011 SSA disability report (Doc. 9, pp. 376-83) does not list Dr. Hollis as one of plaintiff's health care providers, but once again lists NP Haemmerlein as one (Doc. 9, p. 379).

Turning to the medical evidence of record, NP Bowen conducted a psychiatric evaluation of plaintiff on May 12, 2009 and signed the evaluation that same date. (Doc. 9, pp. 677-82) Dr. Hollis's name does not appear anywhere on the evaluation. There are twenty-two "Outpatient Treatment Progress Notes" in the record from the Centerstone Community Health Center (Centerstone) dating from June 10, 2009 to February 4, 2011 in which Dr. Hollis' name does appear. (Doc. 9, pp. 670-74, 695-97, 702-11, 759-60, 765-66, 796-99, 821-22, 842-43, 849-50, 859-64, 867-68, 873-74, 876-79, 919-22) However, either NP Bowen or NP Haemmerlein is identified as the "provider" in each of these progress notes, and signed as such on the actual date of service. Although Dr. Hollis' name appears below theirs adjacent to the heading "MD Signature" in each of these progress notes, Dr. Hollis never signed the progress notes earlier than three days after service was provided. In fact, the record shows that Dr. Hollis signed the progress notes an average of ten days after service was provided, with an average of 23 days more than half of the time.

Dr. Hollis is mentioned repeatedly in "Infoscriber Medication Log[s]." (Doc. 9, pp. 981, 988, 991, 997, 1002, 1007, 1028, 1097-98, 1105-06, 1109-10, 1113-15, 1120, 1142-44, 1148-50, 1155-56, 1173-75, 1182-84, 1187-89, 1194-96, 1202-04) However, in each and every entry, Dr. Hollis is identified as the "Supervising Physician," whereas the actual "Prescriber" is identified as either NP Haemmerlein or NP Christine Henry. There also are three other "Medication Log[s]" in the record covering the period February 13, 2008 to May 18, 2011 that show NP Bowen prescribed medications for plaintiff. (Doc. 9, pp. 712-13, 894-97, 924-25) There is no mention of Dr. Hollis in these three records, as "Supervising

4

Physician" or otherwise.

As for testimonial evidence, plaintiff's counsel stated the following to the ALJ at the August 2, 2014 hearing:

> [T]he last point I'd like to make is all the doctors that have given opinions about Brianna that have seen her have given significant limitations. Centerstone, Dr. Lynn Hollis [phonetic] – 47, 48 GAF scores – Dr. Lambert, which we discussed earlier, as well as Dr. Owens – those are the doctors who've actually seen her. . . .

(Doc. 9, p. 78) Notwithstanding counsel's statement that Dr. Hollis had "actually seen her," no evidence was adduced through testimony at either the first or the second hearing that Dr. Hollis ever saw plaintiff, much less treated her. Moreover, a thorough review of the record shows that Dr. Hollis never assigned plaintiff either of the GAF scores noted above. There are several Tennessee Target Population Group (TPG) Forms in the record that assign plaintiff with GAF scores of 47 or 48. (Doc. 9, pp. 693-94, 731-36, 741-42, 1190-91) However, Dr. Hollis's name appears nowhere on any of these forms. GAF scores of 47 and 48 also appear repeatedly in the "Outpatient Treatment Progress Notes" discussed above. (Doc. 9, pp. 702, 710, 760, 765, 796, 799, 813, 822, 843, 850, 859, 868, 876, 878, 919, 922) Once again, however, the treatment reflected in those progress notes was provided by NPs Bowen and Haemmerlein, not Dr. Hollis. GAF scores of 47 and 48 also are noted repeatedly in the "Infoscriber Medication Log[s]" discussed above. However, treatment provided in those entries are attributed to NPs Haemmerlein (Doc. 9, pp. 987, 1001, 1006, 1027, 1104, 1172, 1181), Henry (Doc. 9, pp. 1125, 1135, 1141, 1147, 1154), and Bowen (Doc. 9, pp. 1186, 1193, 1201) – again, not to Dr. Hollis. Finally, there are several other records in which the GAF scores of 47 and 48 are noted, but those records are attributable to Licensed Clinical Social Worker (LCSW) Dianne Castellano (Doc. 9, p. 714) and Jessi Lefholz/Johnson,[2] MS (Doc. 9, pp. 899, 926, 980, 1096) – once again, not to Dr. Hollis.

Finally, there is the Medical Source Statement (MSS) dated October

---

[2] The following providers are identified in the record: Jessi Lefholz and Jessi Johnson, both of whom have the same identifier "710" following their name. Although the dates applicable to these names overlap, the Magistrate Judge assumes without deciding that the identifier "710" signifies that Lefholz and Johnson are the same person.

> 1, 2014 that is the basis for this claim for relief. (Doc. 9, pp. 1268-70) The MSS bears the signature of NP Henry, below which the following note appears on the form: "May be completed and signed by PA, NP, etc. Must be co-signed by M.D., or Ph.D." (Doc. 9, p. 1270) Dr. Hollis signed the MSS following a forward slash (/) that appears immediately after NP Henry's signature, showing that NP Henry actually completed the MSS, and Dr. Hollis *co-signed* the document after the fact. Once again, no direct contact or association indicated between doctor and patient.
>
> While it may be that providers in a clinic environment will see the claimant more frequently than will the supervising physician, and while it also may be true that the supervising physician need only have access to the entire treatment record, it also must be true that the supervising physician has actually seen and examined the patient directly before characterizing a supervising physician as a treating source. *See Rios v. Comm'r of Soc. Sec.*, 2016 WL 3144086 * 7 (N.D. Ohio June 6, 2016). More particularly, a physician is not a treating source in the absence of any evidence that the physician ever saw or evaluated a claimant. *See Matelske v. Comm'r of Soc. Sec.*, 2013 WL 4520202 * 13 (W.D. Mich. Aug. 26, 2013); *Bieri v. Astrue*, 2008 WL 4185967 * 10 (S.D. Ohio Sept. 2, 2008). Because there was not an ongoing treatment relationship between plaintiff and Dr. Hollis, the latter is not a "treating source" under the regulations. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 398-99 (6th Cir. 2014); *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506-07 (6th Cir. 2006); *Daniels v. Comm'r of Soc. Sec.*, 152 Fed.Appx. 485, 490 (6th Cir. 2005).

(Doc. 22, pp. 5-8)

Plaintiff does not challenge the Magistrate Judge's analysis of the administrative record quoted above. Plaintiff argues only that two (2) pages in the 1,451-page administrative record, *i.e.*, pages 1127 and 1132,[3] establish that Dr. Hollis was a treating source and, as such, the Magistrate Judge erred in not giving Dr. Hollis' October 1, 2014 MSS (Doc. 9, pp. 1268-70) controlling weight.

---

[3] Plaintiff refers to pp. 1127 and 1132 in her argument. These two page numbers correspond to the page ID # assigned by CMECF. These two page numbers have been changed below to reflect the page numbers that appear in bold in the lower right corner of the pages in the administrative record to be consistent with the page numbers used in the excerpts of the R&R quoted above.

Plaintiff's page 1132 is the fourth page of a four-page Centerstone Medical Progress Note (progress note) dated May 5, 2014. (Doc. 9, pp. 1123-26) NP Henry is identified as the "Provider" on the first page. (Doc. 9, p. 1123) Her name also appears on the last page: "Signed By: Christine C. Henry – 519." (Doc. 9, p. 1126) Dr. Hollis' name appears on the last page below NP Henry's name: "Super Signed By: Lynna G Hollis – 3243." (Doc. 9, p. 1126)

Plaintiff's page 1127 is the fourth page of another four-page progress note, this one dated July 7, 2014. (Doc. 9, pp. 1118-21) Again, NP Henry is identified as the "Provider" on the first page (Doc. 9, p. 1118), and again, her name appears on the last page: "Signed By: Christine C. Henry – 519." (Doc. 9, p. 1121) Here too, Dr. Hollis' name appears on the last page of the progress note below NP Henry's name: "Super Signed By: Lynna G Hollis – 3243." (Doc. 9, p. 1121)

Plaintiff's theory of relief is that, because Dr. Hollis and NP Henry electronically signed the two documents on the same day, Dr. Hollis either treated plaintiff, was present when NP Henry treated her, or at least she saw plaintiff. In other words, in plaintiff's view, the foregoing possible interpretations of Dr. Hollis' name on the progress note proves that she was a treating source.

Plaintiff's reasoning is unpersuasive. First, as shown above, NP Henry is identified as the "[p]rovider" in both treatment records, not Dr. Hollis. Second, NP Henry – the provider – is identified as the person who "[s]igned" both treatment records. Dr. Hollis, on the other hand, is identified merely as having "[s]uper [s]igned" those records. In short, plaintiff's opinion that Dr. Hollis actually treated plaintiff, or was at least present during her treatment, is mere speculation. Speculation is not proof. Indeed, a reasonable person could just as easily conclude that Dr. Hollis was merely more diligent in reviewing NP Henry's progress notes on these two dates than the record shows she usually was. Plaintiff as much as admits the speculative nature of her argument when she writes, as noted above at p. 3, "this is as close as it gets to prima facie evidence of Dr. Hollis being

7

a treating or examining physician . . . ." "[A]s close as it gets" is not good enough, especially given that substantial evidence supports the Magistrate Judge's determination that Dr. Hollis was not a treating source.

Plaintiff has failed to show that the Magistrate Judge erred in his determination that Dr. Hollis was not a treating source. Consequently, plaintiff's first argument is without merit.

**B. Whether the Magistrate Judge Erred in Relying on *Matelske* and *Bieri*, and Whether the Two Progress Notes at Issue Constitute Substantial Evidence That Plaintiff Is Disabled under SSA Guidelines**

Plaintiff's second and third arguments are predicated on a finding that Dr. Hollis' opinion was entitled to controlling weight under the treating physician rule. As shown above, however, the Magistrate Judge did not err in determining that Dr. Hollis was not a treating source. Consequently, plaintiff's second and third arguments in this claim of error are moot and, therefore, without merit.

## VI. CONCLUSION

For the reasons explained above, the Court will: 1) overrule plaintiff's objections (Doc. 25); 2) accept and adopt the Magistrate Judge's R&R (Doc. 22) as the Court's findings of fact and conclusions of law; 3) deny plaintiff's motion for judgment on the administrative record (Doc. 13); and affirm the SSA's decision regarding plaintiff's application for benefits. An appropriate order is entered herewith.

**ENTER** this 12th day of September 2017.

Aleta A. Trauger
United States District Judge